MARK C. NOLES,                          )
                                        )
          Petitioner,                   )
                                        )
v.                                      )          No. 3:10-cv-01124
                                        )          Judge Sharp
DAVID R. OSBORNE, Warden,               )
                                        )
          Respondent.                   )

## M E M O R A N D U M

## I.    INTRODUCTION AND BACKGROUND

The petitioner, Mark C. Noles,[1] has filed a *pro se* petition for a writ of *habeas corpus* under 28 U.S.C. § 2254.  (Docket No. 1).  The petitioner is an inmate at the West Tennessee State Penitentiary in Henning, Tennessee.  The petitioner challenges the legality of his confinement under a 2004 judgment of the Criminal Court for Rutherford County, Tennessee, convicting him of attempted aggravated arson.  *State v. Noles,* No. M2006-01534-CCA-R3-CD, 2007 WL 3274422 (Tenn. Crim. App. Nov. 6, 2007)( perm. app. denied April 7, 2008).   The trial court sentenced the defendant, who was a Range II multiple offender, to a sentence of seventeen (17)  years imprisonment at thirty-five percent.  (*Id.*)

Noles appealed his sentence to the Tennessee Court of Criminal Appeals.  (Docket No. 18-7).  The appellate court affirmed the trial court's imposition of the seventeen (17)  year sentence.

---

[1]  Throughout this memorandum, Mark C. Noles is referred to as "petitioner," "defendant," and "appellant" interchangeably.

*Id.* Noles filed an application seeking discretionary review by the Tennessee Supreme Court, which was denied on April 7, 2008. *(Id.)*

Noles filed a *pro se* petition for post-conviction relief. (Docket No. 18-7). Counsel was appointed and an amended petition for post-conviction relief and petition for writ of error coram nobis were filed. *Noles v. State of Tennessee*, No. M2009-CCA-R3-PC, 2010 WL 2867180 (Tenn. Crim. App. July 22, 2010)(perm. app. denied Nov. 10, 2010). Among other things, Noles sought relief on the basis that he received ineffective assistance of counsel and that he recently discovered new evidence indicating that one of the main witnesses at trial had recanted his testimony. *(Id.)* After a hearing, the post-conviction court dismissed the petition for writ of error coram nobis as time-barred and denied post-conviction relief. *(Id.)*

Noles appealed. On July 22, 2010, the Tennessee Court of Criminal Appeals affirmed the post-conviction court's denial of relief. *Noles v. State of Tennessee*, No. M2009-CCA-R3-PC, 2010 WL 2867180 (Tenn. Crim. App. July 22, 2010)(perm. app. denied Nov. 10, 2010). Noles filed an application for discretionary review in the Tennessee Supreme Court. On November 12, 2010, the Tennessee Supreme Court issued an order denying Noles's application. *(Id.)* Noles did not file a petition for writ of certiorari in the United States Supreme Court.

On November 24, 2010, Noles timely filed the instant petition. (Docket No. 1). In his petition, the petitioner asserts five grounds for relief. The petitioner names David R. Osborne, the warden of the West Tennessee State Penitentiary, as the respondent.

Upon its receipt, the court conducted a preliminary examination of the petition and determined that the petitioner had stated a colorable claim for relief. Accordingly, the court entered an order on January 25, 2011, directing the respondent to answer or otherwise respond to the

petition. (Docket No. 9). The respondent filed an answer/response urging the court to deny the petition and dismiss the action. (Docket No. 17). The petitioner has not filed a reply in opposition to the respondent's motion to dismiss.

Upon consideration of the record, the court concludes that an evidentiary hearing is not needed. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). Therefore, the court shall dispose of the petition as the law and justice requires. Rule 8(a), Rules — § 2254 Cases.

Jurisdiction and venue in this court are appropriate under 28 U.S.C. § 2241(d) because the petitioner was convicted in the Criminal Court for Rutherford County in Murfreesboro, Tennessee.

## II. SUMMARY OF THE EVIDENCE

A detailed summary of the evidence adduced at the petitioner's trial and post-conviction hearing is set forth in detail in the post-conviction opinion of the Tennessee Court of Criminal Appeals as follows:

> At trial, there were multiple accounts of the events leading up to the fire. The jury heard testimony from Malinda Ann Stacey, one of the occupants of the triplex apartment building on East Northfield Boulevard in Murfreesboro. Ms. Stacey's apartment was located on the second story of the building and was accessible by an interior staircase in the center of the building. At the time of the fire, Ms. Stacey testified that she was involved in a personal relationship with Jason Walz. Ms. Stacey testified that she had known [Petitioner] for quite sometime, but had not spent a lot of time around [Petitioner] until he started dating Jodi Wilkinson. Ms. Stacey testified that in the days preceding the fire, Kelly Rose, Jodi Wilkinson, Hope Dennis and Ms. Dennis' boyfriend Paul Fetty stayed at her apartment. [Petitioner's] pit bull dog was also staying at the apartment. The dog
>
> was sick, often throwing up blood and having blood in its bowel

movements. Ms. Stacey told [Petitioner] that he needed to take the dog somewhere else.

On August 12, 2002, Ms. Stacey witnessed her downstairs neighbor, David, give seventy-five dollars to [Petitioner] for the purpose of buying cocaine. [Petitioner] took the money, but never gave David any drugs. According to Ms. Stacey, she, Hope Dennis, and Ms. Wilkinson shaved [Petitioner's] dog in retaliation. After shaving the dog, Ms. Dennis wrote, "You're next, bitch" on the dog with a black magic marker. *Id.* at *1. After that incident, Ms. Stacey received multiple threatening phone calls. *Id.* Later that day, Petitioner came to the apartment with a large group of people. While they were at her apartment, Ms. Stacey "heard one of the people in the group say, 'We'll just come back and burn her MF'ing house down.'" *Id.* Ms. Stacey left her apartment sometime later. When she returned after dark, her apartment was on fire. *Id.* at *2.

Amanda Howard testified at trial that she was present when Petitioner was at Ms. Stacey's apartment. She left with a group to go to a gas station to get gas. They left the gas station, went back by Ms. Stacey's apartment, and it was already on fire. *Id.* Ms. Howard stated that she:

drove back to her trailer and [Petitioner], Mr. Anderson, Mr. Walz and Eric Taylor were already there. Mr. Taylor had burns on his face and Mr. Anderson was applying cold rags to the wounds. Ms. Howard stated that [Petitioner] and Mr. Walz were sitting on the couch talking about the fire at Ms. Stacey's apartment, acting "like it was fun and jokes." Ms. Howard heard [Petitioner] say that "[h]e threw the bottle and hit Eric with it. That's why he got burned." Ms. Howard also heard [Petitioner] say that "they ran up the stairs and started throwing stuff in the house." [Petitioner] threatened the group, telling them that he would hurt them if they said anything to the fire department or police.

*Id.* Kelly Rose testified she "heard [Petitioner] say that 'he was going to have us beat up and he was going to beat us up, that he was going to burn Malinda's [Ms. Stacey's] house down.'" *Id.* at *3. Angel Whitaker Smith, a woman who was dating Mr. Walz and knew that Ms. Stacey and Mr. Walz had dated in the past, was responsible for going to Ms. Stacey's apartment to pick up Petitioner's dog after it had been shaved. Ms. Smith thought that Petitioner was "very angry" when he saw his dog. *Id.* at *3. She testified that Petitioner and some men went to the gas station to get gas. *Id.* at *4. After they left the gas station, the apartment was on fire. *Id.* She testified that

4

Petitioner told her he set the apartment on fire. *Id*.

Laura Hedgepath also testified at trial. Her testimony was consistent with Ms. Smith's. Next, the following evidence was presented:

Eric Taylor testified that he suffered burns on August 12, 2002, when [Petitioner] threw a "cocktail bomb" at Malinda Stacey's apartment. He did not remember what the confrontation between the two groups was about, but remembered going to the gas station with [Petitioner] and others. At the gas station, they purchased "forty cents' worth of gas in two bottles." The bottles also had rags stuffed in them. After leaving the gas station, they went to Malinda Stacey's apartment. *Id*. at *5. During the investigation, a videotape was recovered from a nearby gas station's surveillance camera on the night of the fire. The videotape showed Andy Anderson buying one dollar's worth of gas. Four minutes later, the tape shows Ms. Hedgepath and another woman buying two beers and two dollar's worth of gas. *Id*. at *6.

Petitioner was convicted of attempted aggravated arson and sentenced, as a Range II, multiple offender, to seventeen years in incarceration. On direct appeal, Petitioner presented the following issues: (1) whether the evidence was sufficient to support the verdict; (2) whether the trial court improperly instructed the jury on accomplice testimony; and (3) whether the trial court denied the appellant the right to allocution at the sentencing hearing. *Id*. at *7.

This Court determined that the evidence was sufficient to support the convictions, specifically determining that the accomplice testimony was sufficiently corroborated. *Id*. at *9. In examining the jury instruction issue, this Court noted that Petitioner failed to request a special instruction on accomplice testimony at trial and further failed to include the issue in a motion for new trial. *Id*. Despite these deficiencies, we reviewed the issue for plain error. *Id*. We determined that there was no plain error where Petitioner failed to demonstrate "that he did not waive the issue for tactical reasons or that consideration of the error is necessary to do substantial justice. Furthermore, [Petitioner did not show] that a clear and unequivocal rule of law was breached by the trial court in not instructing the jury as to which witnesses should be considered accomplices." *Id*. at *11.

Subsequently, Petitioner sought review with the Tennessee Supreme Court. Petitioner's application for permission to appeal was denied on April 7, 2008. On December 22, 2008, Petitioner filed a pro se

petition for post-conviction relief. In that petition, Petitioner argued that he received ineffective assistance of counsel and that there was newly discovered evidence that would prove his innocence. Specifically, Petitioner argued that counsel was ineffective for failing to seek an accomplice instruction for the jury and failing to inform Petitioner of the right of allocution at sentencing. Additionally, Petitioner alleged that a letter from co-defendant Eric Taylor indicated that his testimony at trial was perjured. Petitioner also reiterated the same issues that were raised in the direct appeal. The post-conviction court reviewed the petition and appointed counsel to represent Petitioner.

On January 28, 2009, Petitioner filed an amended petition for post-conviction relief and petition for writ of error coram nobis. In this petition, Petitioner reiterated the issues raised in the petition for post-conviction relief and argued that trial counsel failed to adequately investigate and prepare for the case and that the prosecution withheld exculpatory evidence. Additionally, Petitioner argued that newly discovered evidence proved his innocence.

The post-conviction court held a hearing on the petition for post-conviction relief and petition for writ of error coram nobis. At the hearing, the post-conviction court first addressed the timeliness of the petition for writ of error coram nobis. Petitioner acknowledged that the writ was filed beyond the one-year statute of limitations but argued that he did not receive a letter from co-defendant Eric Taylor until July of 2007, in which Mr. Taylor recanted his testimony. The post-conviction court dismissed the petition, determining that due process concerns did not toll the statute of limitations. The post-conviction court was not satisfied that Mr. Taylor's trial testimony was false and that the statements made in the letter to Petitioner were true. Further, the post-conviction court found that Petitioner was not surprised by Mr. Taylor's trial testimony or unable to know the falsity of the testimony at trial because Petitioner was "present at the events" which gave rise to the testimony. In other words, Petitioner could not show that he was without fault in failing to present the evidence in a more timely fashion. Finally, the post-conviction court determined that the jury would not have reached a different result even if Mr. Taylor's testimony at trial would have been different. In other words, there was adequate evidence of Petitioner's involvement even when excluding the testimony of Mr. Taylor. The post-conviction court held that Mr. Taylor's testimony was not relevant at the hearing but allowed Petitioner to introduce Mr. Taylor's letter as an exhibit.

As the hearing continued on the issues presented in the post-conviction petition, Petitioner informed the post-conviction court that he had subpoenaed several witnesses to testify, including trial counsel, Mr. Taylor, and Jason Walz. After opening statements, the post-conviction court informed the parties that, prior to becoming a judge, he had been appointed to represent Mr. Walz on his charge of aggravated arson stemming from the same incident.

Petitioner asked the post-conviction court to recuse itself from the hearing. Specifically, Petitioner argued that the post-conviction court could have been privy to information he received during his representation of Mr. Walz that would affect his ability to be impartial during the post-conviction proceedings. The post-conviction court stated that it was merely rendering an opinion on whether Petitioner received ineffective assistance of counsel rather than reviewing the merits of the trial. Further, the post-conviction court noted that this Court had reviewed the sufficiency of the evidence on direct appeal. The post-conviction court ultimately determined that it would not recuse itself and would reserve the question of whether Mr. Walz could testify during the post-conviction proceedings.

Petitioner took the stand at the post-conviction hearing. According to Petitioner, trial counsel was appointed to represent him at trial. Petitioner complained that trial counsel failed to subpoena all the witnesses that he wanted present at trial. In particular, Petitioner wanted Mr. Walz to testify at trial. Petitioner felt that if Mr. Walz testified face-to-face with Petitioner he would tell "the truth" that Petitioner did not start the fire at the apartment. Petitioner recalled that trial counsel "might" have suggested that he "separate himself" from Mr. Walz.

The State introduced the testimony from the guilty plea hearing wherein Mr. Walz pled guilty to the charges. At that hearing, Mr. Walz named Petitioner as a participant in the arson. Petitioner conceded that the guilty plea transcript would not have been beneficial at trial but argued that the jury could have discredited the testimony from the guilty plea hearing if Mr. Walz were to testify differently at trial.

Petitioner complained that the jury instructions regarding accomplices should have specifically named the witnesses that were accomplices. According to Petitioner, this would have also required the trial court to instruct the jury regarding corroboration of accomplice testimony. Petitioner claimed that trial counsel did not inform him that accomplice testimony had to be corroborated.

On cross-examination, Petitioner acknowledged that trial counsel cross-examined the witnesses and brought out inconsistencies in their statements regarding Petitioner's involvement in the arson. Trial counsel also brought out that at least one of the accomplices had charges pending against them related to the apartment fire and that another accomplice had a prior criminal record. Petitioner stated, however, that the jury instructions were confusing to the jury.

With regard to sentencing, Petitioner alleged that trial counsel failed to inform him that he could present character witnesses or that he had a right to allocution. Petitioner found out about this right prior to the filing of the amended motion for new trial and complained to trial counsel about his failure to inform him of this right. Petitioner claims that he asked trial counsel to include this issue in the amended motion for new trial and trial counsel failed to do so. Petitioner acknowledged that trial counsel made a statement to the trial court during the sentencing hearing on his behalf. However, Petitioner insisted that if given the opportunity to give an allocution at the sentencing hearing, he could have addressed "things" in his presentence report and could have informed the trial court of his Bible studies.

Petitioner testified that character witnesses could have increased mitigating factors so that he could receive a shorter sentence from the trial court. Petitioner did not present any character witnesses at the post-conviction hearing, though he named several witnesses that he would have called.

Petitioner acknowledged that he had multiple convictions including: aggravated assault, possession of contraband in a workhouse, burglary of a vehicle, carrying a weapon with the intent to go armed in public, misdemeanor theft, contributing to the delinquency of a minor, driving under the influence, public intoxication, criminal trespass, and others. Petitioner also admitted that he had at least five prior felonies.

Trial counsel also testified at the post-conviction hearing. He acknowledged that he was appointed to represent Petitioner after another attorney withdrew from representation. Trial counsel had been practicing law since 1994 and devoted over 85% of his practice to criminal law. Prior to being appointed, trial counsel was aware of an offer from the State for a ten-year sentence in exchange for a guilty plea. Trial counsel attempted to "get that offer back on the table" when he was appointed to represent Petitioner, but the State

refused to make another offer.

Trial counsel could not recall the specific reason for failing to subpoena Mr. Walz. Trial counsel specifically stated that he was aware of Mr. Walz's testimony at the guilty plea hearing that implicated Petitioner and felt that he would have been "nervous" to call him as a witness at trial.

Trial counsel testified that he did not request a jury instruction that would have specifically listed the accomplices. He expressed regret over this decision and vowed to make such a request in all future cases where the issue arose. Trial counsel stated that he did "vigorously" cross-examine the accomplices at trial, attacking their credibility. Further, trial counsel noted that the trial court gave an accomplice instruction to the jury but that the instruction did not list the accomplices' names.

Trial counsel also admitted that prior to Petitioner's case he was not familiar with an allocution. Additionally, he admitted that he failed to raise the issue in the motion for new trial but attempted to raise it at the hearing. Trial counsel also informed the post-conviction court that Petitioner's fiancée worked for him during the time of the trial, and she was an excellent worker. They were not engaged at the time.

Trial counsel did not recall Petitioner asking to present specific character witnesses at the sentencing hearing. Petitioner insisted on presenting church certificates that he had received for participating in certain Bible study classes as exhibits at the hearing. Trial counsel introduced these as exhibits at the sentencing hearing as requested.

Petitioner's wife also testified at the hearing. She had been a legal assistant for trial counsel for three years. According to Mrs. Noles, trial counsel neglected his clients because of his tumultuous personal relationship. Specifically, Mrs. Noles recalled trial counsel fighting with his girlfriend in the days preceding Petitioner's trial.

At the conclusion of the hearing, Petitioner again sought to introduce the testimony of Mr. Walz. The trial court found that the testimony would not be "relevant" but told Petitioner that he could make an offer of proof. Petitioner did not call Mr. Walz, instead opting merely to introduce the letter of Mr. Taylor as an exhibit to the hearing.

After hearing the testimony, the post-conviction court denied post-conviction relief. Specifically, the post-conviction court

determined that Petitioner failed to show that trial counsel rendered ineffective assistance of counsel for failing to inform Petitioner of the right to allocution. Petitioner raised this issue on direct appeal and was unsuccessful. Moreover, the post-conviction court concluded that Petitioner failed to show how the outcome of his sentencing hearing would have been different had he made an allocution at the sentencing hearing.

The post-conviction court also found that Petitioner failed to show that trial counsel was ineffective for failing to seek a jury instruction that would specify which witnesses were accomplices. Specifically, the post-conviction court noted that Petitioner failed to show that the jury was confused or that naming some of the witnesses as accomplices would have changed the outcome of the trial.

Next, the post-conviction court determined that Petitioner failed to show that trial counsel was ineffective for failing to call Mr. Walz as a witness. The court accredited trial counsel's testimony in that trial counsel was aware of Mr. Walz's statements that implicated Petitioner in the crime. The post-conviction court concluded that Petitioner failed to establish prejudice and "offered no evidence to show how Mr. Walz's testimony would be both favorable and material." Additionally, the court noted that Petitioner failed to show that the testimony would have changed the outcome of the trial.

Petitioner appeals the dismissal of the post-conviction petition and the petition for writ of error coram nobis. Further, Petitioner insists that the post-conviction court improperly refused to recuse itself from the post-conviction proceedings and improperly refused to allow Petitioner to present two witnesses at the post-conviction hearing.

*Noles v. State of Tennessee*, No. M2009-CCA-R3-PC, 2010 WL 2867180, at **1-7 (Tenn. Crim. App. July 22, 2010)(perm. app. denied Nov. 10, 2010).

### III.    STANDARD

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court

judgment:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial.  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## A.      Ineffective Assistance of Counsel

The petitioner alleges three instances of ineffective assistance of counsel.  (Docket No. 1). First, the petitioner alleges that his attorney failed to object to the jury instructions regarding accomplice testimony.  The petitioner believes that the jury instructions should have specifically named the witnesses who were accomplices and that this specificity would have required the trial court  to instruct the jury regarding corroboration of accomplice testimony.  (Docket No. 1 at pp.6-8).  Second, the petitioner alleges that his attorney was ineffective in failing to (1) inform the petitioner of his right to allocution at sentencing; (2) present any witnesses or evidence at the

sentencing hearing; and (3) raise this issue in his motion for new trial or in a request for a new sentencing hearing. (*Id*. at pp. 8-10). Third, the petitioner alleges that his attorney was ineffective because he did not subpoena Jason Walz as a trial witness, despite the petitioner's desire for his attorney to subpoena Walz. (*Id*. at pp. 10-12). The court will address each argument in turn.

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of a person accused of a crime to the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. *See Bell v. Cone*, 535 U.S. 685, 694-95 (2002). Trial counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Reasonable attorneys may disagree on the appropriate strategy for defending a client. *Bigelow v. Williams,* 367 F.3d 562, 570 (6th Cir. 2004).


The prejudice element requires a petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

A court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. *Strickland,* 466 U.S. at 695. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)(*en banc*)). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

### 1.     Accomplice jury instruction

First, the petitioner alleges that his attorney failed to object to the jury instructions regarding accomplice testimony. According to the petitioner, the jury instructions should have specifically named the witnesses who were accomplices and that this specificity would have required the trial court to instruct the jury regarding corroboration of accomplice testimony. (Docket No. 1 at pp.6-8).

In responding to all of the petitioner's ineffective assistance of counsel claims, the respondent states simply: "The Tennessee Court of Criminal Appeals' ruling is neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Case

Supreme Court and was based on a reasonable determination of the facts in light of the evidence in the record. Thus, these claims are without merit and should be dismissed." (Docket No. 17 at pp. 10-11).

Under Tennessee law, "[w]hen there are undisputed facts regarding a witness's participation in a crime, the question of whether he is an accomplice is a question of law for the trial court." *State v. Perkinson*, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992). However, when the facts are in dispute or are susceptible to different inferences, the determination of whether a witness is an accomplice is a question for the jury. *See Conner v. State*, 531 S.W.2d 119, 123 (Tenn. Crim. App. 1975). Tennessee law requires only a modicum of evidence in order to sufficiently corroborate accomplice testimony. *State v. Copeland*, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984). That is to say, "[t]he corroborating evidence is sufficient if it connects the accused with the crime in question." *State v. Griffis*, 964 S.W. 2d 577, 589 (Tenn. Crim. App. 1997).

On direct appeal of his conviction and sentence, Noles argued that the trial court improperly instructed the jury regarding accomplice testimony. 2007 WL 3274422, at *9. The State argued that the appellant waived this issue for failure to include it in a motion for a new trial and, moreover, the appellant had not requested that the trial court instruct the jury as to which of the witnesses were accomplices. *Id.* The State alternatively argued that the trial court properly instructed the jury on accomplice testimony. *Id.* at *9. The appellant acknowledged that the issue had not properly raised in a motion for new trial, but argued that the trial court's failure to properly instruct the jury rose to the level of plain error. *Id.* at *10.

The Tennessee Court of Appeals on direct appeal noted that Noles had not raised the jury instruction issue in a motion for new trial. *Id*. at *10. However, the state appellate court considered whether the issue rose to the level of a plain error. *Id*. at **10-11. In finding that it did not, the court explained:

> In the case herein, the trial court instructed the jury on accomplice testimony, but did not instruct the jury as to which witnesses were

accomplices.  On appeal, the appellant has not demonstrated that he did not waive the issues for tactical reasons or that consideration of the error is necessary to do substantial justice.  Furthermore, the appellant has not shown that a clear and unequivocal rule of law was breached by the trial court in not instructing the jury as to which witnesses should be considered accomplices.

\* \* \*

The appellant has failed to establish that all five of the *Adkisson* factors are present herein.  Consequently, we decline to find plain error on the part of the trial court.

*Id*. at 11.[2]

Noles raised this issue again in his petition for post-conviction relief.  On cross-examination during the petitioner's post-conviction hearing, the petitioner acknowledged that trial counsel had cross-examined the alleged accomplices and brought out inconsistencies in their statements regarding the petitioner's involvement in the arson, as well as the fact that at least one of the accomplices had charges pending against him or her related to the apartment fire and that another accomplice had a prior criminal record.  *Id.*  The petitioner maintained, however, that the jury instructions were confusing to the jury.  *Id.*

Trial counsel also testified at the post-conviction hearing.  *Id.*  He testified that he did not request a jury instruction that would have specifically listed the accomplices.  *Id.*  He expressed regret over this decision and vowed to make such a request in future cases where the issues arose. *Id.*  Trial counsel stated that he did "vigorously" cross-examine the accomplices at trial, attacking their credibility.  *Id.*  Further, trial counsel noted that the trial court gave an accomplice instruction to the jury but that the instruction did not list the accomplices' names.  *Id.*

After considering this testimony, the state post-conviction court denied the petitioner's

---

[2] In Tennessee, in order to review an issue under the plain error doctrine, five factors must be present, as set forth in *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994).

petition for relief on this ground, finding that "Petitioner failed to show that trial counsel was ineffective for failing to seek a jury instruction that would specify which witnesses were accomplices." 2010 WL 2867180, at *6. The post-conviction court specifically noted that the petitioner had failed to show that the jury was confused or that naming some of the witnesses as accomplices would have changed the outcome of the trial. *Id.*

On appeal to the state appellate court from the denial of post-conviction relief, Noles again argued that counsel was ineffective in failing to seek a more specific accomplice instruction for the jury. 2010 WL 2867180, at *3. Specifically, he "complained that the jury instructions regarding accomplices should have specifically named the witnesses that were accomplices. According to Petitioner, this would have also required the trial court to instruct the jury regarding corroboration of accomplice testimony." *Id.* at *5. The Tennessee Court of Criminal Appeals agreed with the post-conviction court that the petitioner was not entitled to a plain error review, finding that, even if the petitioner could show that trial counsel's performance was deficient, the petitioner could not show prejudice because "the issue would not likely change the result of the trial." *Id.* at *10.

This court agrees. Even if trial counsel had requested a specific jury instruction requiring the accomplices to be named, the jury still had sufficient evidence on which to convict Noles of attempted aggravated arson. *See State v. Noles,* 2007 WL 3274422, at *9 (finding that there was sufficient evidence to corroborate the accomplice testimony presented at trial). As a result, Noles cannot establish that he was prejudiced by his trial counsel's failure to request the specific accomplice jury instruction.

The petitioner insists that "[t]here were too many people involved for the jury to understand

and properly perform its fact-finding role of identifying the accomplices and determining the sufficiency of the corroborating evidence given the limited, vague charge the jury was given regarding accomplice testimony." (Docket No. 3 at p.13). However, when the facts are in dispute or are susceptible to different inferences, as was the case here, the determination of whether a witness is an accomplice is a jury question. *See Conner*, 531 S.W.2d at 123. As the state appellate court found, the jury effectively performed its role:

> Viewing the evidence in the light most favorable to the State, the proof at trial established that the appellant was one of the individuals that went to Ms. Stacey's apartment and threw one of the cocktail bombs, setting fire to the building. Several of the witnesses, including Ms. Howard, Ms. Whitaker, and Ms. Hedgepath testified that they heard the appellant admit his involvement in the fire when the group gathered at Ms. Howard's trailer after the fire was started. Further, Mr. Taylor testified that he and the appellant were the individuals that threw the gasoline-filled beer bottles.
>
> While there was testimony implicating the appellant in the arson from individuals who could have been considered by the jury to be accomplices, there was also testimony implicating the appellant from individuals such as Ms. Howard, Ms. Whitaker, and Ms. Hedgepath, who while friends of the appellant, knew nothing about the fire until after the fact. <u>The jury would be well within its province in declining to consider these persons accomplices</u>. Moreover there was testimony from individuals that no one could consider an accomplice. Kelly Rose, who lived with Ms. Stacey, testified that she heard the appellant say "[t]hat he was going to have us beat up and he was going to beat us up, that he was going to burn Malinda's [Ms. Stacey's] house down." Further, both fire inspectors testified that they found broken glass at the scene of the fire that tested positive for the presence of a gasoline product, which is consistent with the State's theory and the testimony of the other witnesses that the appellant and Mr. Taylor threw gasoline-filled beer bottles at Ms. Stacey's apartment building. Finally, there was independent evidence from the surveillance tape at the gas station that one of the people that the appellant had been traveling with purchased forty cents' worth of gasoline shortly before the fire was started at Ms. Stacey's apartment.

> Again, the jury is the primary instrument of justice responsible for
> determining the weight and credibility to be given to the testimony
> of the witnesses. *Pruett*, 788 S.W. 2d at 561. Conflicts in that
> testimony are matters that are entrusted exclusively to the trier of fact
> and not this Court. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn.
> 1984). <u>Looking at the verdict, it is clear that the jury found sufficient
> corroboration of the accomplice testimony. Recognizing that only a
> modicum of evidence is necessary to corroborate an accomplice's
> testimony, we find that the foregoing direct and circumstantial
> evidence was more than adequate to convict the appellant of
> attempted aggravated arson.</u>

2007 WL 3274422, at *9 (emphasis added). In summary, the court finds that the Tennessee Court of Criminal Appeals correctly applied federal law and reasonably determined the facts in concluding that Noles was not entitled to any relief on this ground.

### 2.    No Certificate of Appealability shall issue as to the petitioner's first ineffective assistance of counsel claim.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's ineffective assistance of counsel claim based on the accomplice jury instruction.

### 3.    Allocution at sentencing hearing

Second, the petitioner alleges that his attorney was ineffective in failing to (1) inform the petitioner of his right to allocution at sentencing; (2) present any witnesses or evidence at the sentencing hearing; and (3) raise this issue in his motion for new trial or in a request for a new

sentencing hearing.  (Docket No. 1 at pp. 8-10).

At the hearing on the petitioner's state post-conviction petition, the petitioner alleges that trial counsel failed to inform the petitioner that he could present character witnesses or that he had a right to allocution.  2010 WL 2867180, at *5.   The petitioner learned about this right prior to the filing of the amended motion for new trial and complained to trial counsel about his failure to inform the petitioner of this right.  *Id.*  The petitioner claimed that he asked trial counsel to include this issue in the amended motion for new trial and trial counsel failed to do so.  *Id.*   The petitioner acknowledged that trial counsel made a statement to trial court during the sentencing hearing on the petitioner's behalf.  *Id.*   However, the petitioner insisted that, if given the opportunity to give an allocution at the sentencing hearing, he could have addressed "things" in his presentence report and could have informed the trial court of his Bible studies.  *Id.*   The petitioner further testified that character witnesses could have increased mitigating factors so that he could have received a shorter sentence.  *Id.*   The petitioner did not introduce any character witnesses at the post-conviction hearing.  *Id.*

The petitioner acknowledged that he had multiple convictions including: aggravated assault, possession of contraband in a workhouse, burglary of a vehicle, carrying a weapon with the intent to go armed in public, misdemeanor theft, contributing to the delinquency of a minor, driving under the influence, public intoxication, criminal trespass, and others.  *Id.*   The petitioner also admitted that he had at least five prior felonies.  *Id.*

Trial counsel also testified at the post-conviction hearing.  *Id.*  He admitted that prior to the petitioner's case he had was not familiar with an allocution.  *Id.* at *6.  Additionally, he admitted that

he failed to raise the issue in the motion for new trial but attempted to raise it at the hearing. *Id.* Trial counsel did not recall the petitioner asking to present specific character witnesses at the sentencing hearing. *Id.* He recalled that the petitioner had insisted on presenting church certificates that he had received for participating in certain Bible study classes as exhibits at the hearing. *Id.* Trial counsel introduced these exhibits as requested. *Id.*

After hearing the testimony, the state post-conviction court denied post-conviction relief. *Id.* Specifically, the post-conviction court found that the petitioner had failed to show that trial counsel rendered ineffective assistance of counsel for failing to inform the petitioner of the right to allocution. *Id.* The post-conviction court concluded that the petitioner had failed to show how the outcome of his sentencing hearing would have been different had he made an allocution at the sentencing hearing. *Id.*

On appeal of the denial of his petition for post-conviction relief, the state appellate court, too, found that the petitioner was not entitled to relief on this issue:

> Trial counsel admitted that he has unaware Petitioner could have given an allocution and apologized for his failure. The post-conviction court determined that Petitioner failed to show prejudice by trial counsel's failure. Additionally, the court noted that Petitioner had an extensive criminal record and even though Petitioner did not make a personal statement at sentencing, trial counsel managed to introduce certificates that Petitioner received for completion of Bible study classes as exhibits at the sentencing hearing. Petitioner has
>
> failed to satisfy his burden. He has not shown that he was prejudiced by his trial counsel's failure to inform him of the right of allocution.

*Id.* at *11.

The court finds that the state courts properly concluded that trial counsel did not render ineffective assistance of counsel when he did not inform the petitioner of his right to allocution at

the sentencing hearing.   Although trial counsel may have been deficient when he did not inform Noles that he had a right to make an allocution at his sentencing hearing, the petitioner cannot show prejudice.   The petitioner contends that he would have liked to have given an allocution at the sentencing hearing to inform the court that he had "been locked up in a cell and sometimes five hours a day studying God's word, and to get those Bible certificates, and it changed the way I feel about a lot of things in my life and mistakes I may have made."   (Docket No. 18-11 at p. 3 n.1; Volume II at p.  64).   However, trial counsel introduced the petitioner's Bible certificates at the sentencing hearing and at the post-conviction hearing, stating:  "Judge, this is a statement as much as anything. [The petitioner] wants you to know that he has successfully completed the Bible correspondence course at the Rutherford County Adult Detention Center.   And he also has a certificate of achievement from the Jail & Prison Ministry."  2007 WL 3274422, at *12.  Thus, the trial court was made aware of the information through counsel that the petitioner wished to convey personally.

In addition, the petitioner admitted at the post-conviction hearing that he had a significant criminal record.   His previous felony convictions warranted an enhanced sentence.  The petitioner has failed to show that the outcome of the sentencing hearing would have been different if he had been allowed to state he had taken Bible classes.

In sum, the court finds that the Tennessee Court of Criminal Appeals correctly applied federal law and reasonably determined the facts  in concluding that Noles was not entitled to any relief on this ground.

**4.      No Certificate of Appealability shall issue as to the petitioner's second ineffective assistance of counsel claim.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's claim that his attorney was constitutionally ineffective for failing to inform the petitioner of his right to allocution.

### 5. Trial counsel's decision not to call Jason Walz as a witness

Third, the petitioner alleges that his attorney was ineffective because he did not subpoena Jason Walz as a trial witness, despite the petitioner's desire for his attorney to subpoena Walz. (Docket No. 1 at pp. 10-12). The petitioner believes that Walz's testimony would have been favorable to the the petitioner. (*Id.* at p.10).

At the petitioner's post-conviction hearing, trial counsel could not recall the specific reason for failing to subpoena Mr. Walz. 2010 WL 2867180, at *6. Trial counsel specifically stated that he was aware of Walz's testimony at Walz's guilty plea hearing that implicated the petitioner as the person who threw the fire bomb. *Id.* Trial counsel explained that he would have been "nervous" to call him as a witness at the petitioner's trial because he could not be sure whether Walz would stand behind his previous sworn testimony or recant. *Id.* In either case, trial counsel felt that Walz's testimony could be problematic. *Id.*

At the conclusion of the state post-conviction hearing, trial counsel sought to introduce Walz's testimony. *Id.* The court determined that the testimony would not be "relevant" but told the

petitioner that he could make an offer of proof. *Id.* The petitioner, however, did not make an offer of proof. *Id.*

The post-conviction court determined that the petitioner had failed to show that trial counsel was ineffective for failing to call Walz as a witness. *Id.* at *7. The court accredited trial counsel's testimony in that the trial court was aware of Waltz's statements implicating the petitioner in the crime. *Id.* The court determined that the petitioner failed to show prejudice and "offered no evidence to show how Mr. Walz's testimony would be both favorable and material." *Id.* The court therefore concluded that the petitioner had failed to show that the testimony would have changed the outcome of the trial. *Id.*

On appeal of the state trial court's denial of post-conviction relief, the petitioner alleged that his trial counsel was ineffective for failing to call Walz as a trial witness. *Id*. at *11. The Tennessee Court of Criminal Appeals rejected the petitioner's argument, finding:

> Prior to trial, trial counsel reviewed Mr. Walz's testimony from his guilty plea, in which he implicated Petitioner as the person who threw the fire bomb. At the post-conviction hearing, trial counsel testified that he did not want to call Mr. Walz as a witness at trial because he was not certain what Mr. Walz would say. In other words, trial counsel made a strategic decision not to call Mr. Walz. This Court cannot second-guess a well-informed, strategic decision after adequate preparation. *See Henley*, 960 S.W.2d at 579.

2010 WL 2867180, at *11. The court agrees. Because trial counsel made an informed, tactical decision not to call Walz as a trial witness, the petitioner has failed to show that trial counsel's performance was deficient under applicable law. *See Strickland*, 466 U.S. at 690-91; *Bigelow,* 367 F.3d at 570.

The Tennessee Court of Criminal Appeals further found that the petitioner had failed to show

prejudice:

> He [trial counsel] neglected to call Mr. Walz to testify at the post-conviction hearing, even after the post-conviction court gave him the opportunity to present the evidence in a proffer of proof. In the absence of such a proffer this Court cannot say that Walz's testimony even might have changed the results at trial. Petitioner is not entitled to relief on this issue.

*Id.* Again, the court agrees with the state courts' conclusion. Even if Walz had presented testimony favorable to Noles at trial, the petitioner has not established that there is a reasonable probability that the outcome of his trial would have been different. As the state appellate court found:

> [T]he proof at trial established that the appellant was one of the individuals that went to Ms. Stacey's apartment and threw one of the cocktail bombs, setting fire to the building. Several of the witnesses, including Ms. Howard, Ms. Whitaker and Ms. Hedgepath testified that they heard the appellant admit his involvement in the fire when the group gathered at Ms. Howard's trailer after the fire was started. Further, Mr. Taylor testified that he and the appellant were the individuals that threw the gasoline-filled beer bottles.

2007 WL 3274422, at *9. The petitioner insists that "[o]ne or more jurors may have considered the issue of guilt differently if they had been permitted to hear from Mr. Walz whose involvement in the events was, admittedly, greater than that of any other participant-witnesses who testified at trial." (Docket No. 1 at p.11). The petitioner further insists that, "[g]iven that all of the prosecution's accomplice-witnesses had prior criminal convictions and all had given prior inconsistent statements about the incident, the jury might have afforded greater weight to Mr. Walz's testimony–particularly in light of the fact that he had already pled [sic] guilty, was serving his sentence and had little if nothing to lose at this point." (Docket No. 1 at pp. 10-11). However, in light of the evidence pointing to the petitioner's guilt, the petitioner has not shown that there is a reasonable possibility that the testimony of Walz would have affected the verdict. In assessing whether a petitioner was

prejudiced by counsel's deficient performance, the court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.  Testimony of at least four other witnesses supported the petitioner's conviction.  The petitioner therefore has not shown that he was prejudiced under *Strickland* by trial counsel's failure to call Walz as a defense witness.

In sum, the court finds that the petitioner has failed to establish that the state appellate court's decision rejecting his claim of ineffective of assistance of counsel is unreasonable so as to justify federal *habeas corpus* relief.

### 6. No Certificate of Appealability shall issue as to the petitioner's third ineffective assistance of counsel claim.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's ineffective assistance of counsel claim based on trial counsel's failure to call Walz as a witness for the defense.

### B. Post-conviction claims

The petitioner's fourth and fifth grounds for *habeas corpus* relief concern his state post-conviction proceedings.  (Docket No. 1 at pp. 12-14).  Specifically, the petitioner alleges that the post-conviction court violated his due process rights because the post-conviction judge should have recused himself from the case and should have allowed two witnesses to testify on the petitioner's behalf.  (*Id.*)  The respondent argues that these claims fail to state claims for which relief can be

granted because Noles has no constitutional right to post-conviction or other collateral review. (Docket No. 17 at p.11). The respondent further argues that the state appellate court's determination of these issues was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court and was based on a reasonable determination of the facts in light of the evidence in the record. (*Id.*)

Section 2254(a) provides that a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986). A due process claim related to collateral post-conviction proceedings, even if resolved the petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because [the court] would not be reviewing any matter directly pertaining to his detention." *Id.* at 247. Accordingly, the Sixth Circuit has repeatedly held that errors in post-conviction proceedings do not directly challenge the judgment pursuant to which a petitioner is in custody and, therefore, are outside the scope of federal *habeas corpus* review. *See Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002); *Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings cannot provide a basis for federal habeas relief"); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief"); *Kirby*, 794 F.2d at 248 ("the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings").

If the court held in favor of Noles on his post-conviction due process claims, the result would not be the release of Noles or a reduction in Noles's time to be served. Neither would a favorable ruling in any other way affect Noles's detention because the court would not be reviewing any matter directly pertaining to his detention. *See Kirby*, 794 F.2d at 245-47. Noles's due process claims based on alleged errors in the state post-conviction proceedings, therefore, are not cognizable.

**No Certificate of Appealability shall issue as to the petitioner's fourth and fifth claims.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to grounds four and five of the *habeas* petition.

**IV.     Conclusion**

Accordingly, on all grounds, the petition is hereby **DENIED**. Rule 4, Rules - - - § 2254 Cases. The petitioner's claims are **DISMISSED** with prejudice, and a certificate of appealability will not issue as to any of those claims.

An appropriate order will enter.

Kevin H. Sharp
United States District Judge